IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

BRONSEMAN DAVIS,                       )
                                       )
                     Petitioner,       )
                                       )
v.                                     )          Case No. 09-CV-352-JHP-TLW
                                       )
TERRY MARTIN, Warden,[1]               )
                                       )
                     Respondent.       )

<u>OPINION AND ORDER</u>

      This is a 28 U.S.C. § 2254 habeas corpus action. Petitioner is a state prisoner and appears *pro se.* Before the Court is Petitioner's petition for habeas corpus relief (Dkt. # 1). Respondent filed a response (Dkt. # 5), and provided the state court records necessary for adjudication of Petitioner's claims (Dkt. ## 5, 6, 7).  Petitioner filed a reply (Dkt. # 8). For the reasons discussed below, the Court finds the petition for writ of habeas corpus shall be denied.

*BACKGROUND*

**A.     Factual Background**

      On the morning of October 25, 2005, Shaion Brown was sitting on a couch in the front room of his friend's apartment at the Heatherstone Apartments located in Tulsa, Oklahoma. Suddenly, the front door was kicked open. A man, later identified as Petitioner's co-defendant Stacey Ross, threw a large rock into the apartment. Ross stepped aside, and a second man, later identified as Petitioner, moved into the doorway and fired several shots with a 12-gauge shotgun into the apartment. Mr. Brown tried to escape into the back room, but was seriously injured by at least two of the shots fired

---

[1]     Terry Martin has succeeded Greg Province as Warden at Dick Conner Correctional Center. Therefore, the Clerk of Court shall substitute Terry Martin, Warden, in place of Greg Province, Warden, as party Respondent. <u>See</u> Fed. R. Civ. P. 25(d).

by Petitioner. The two men fled, but were later arrested based on information provided by various witnesses.

**B.    Procedural history**

As a result of these events, Petitioner was tried and convicted by a jury of Shooting with Intent to Kill, in Tulsa County District Court Case No. CF-2005-4855. On July 23, 2007, the trial judge sentenced Petitioner, in accordance with the jury's recommendation, to twenty (20) years imprisonment.[2] Dkt. # 7-8, O.R. at 314-15. Petitioner was represented at trial by attorney Richard Clark.

Petitioner appealed his convictions to the Oklahoma Court of Criminal Appeals (OCCA). Represented by attorney Mark Hoover, he raised five (5) propositions of error:

| | |
|---|---|
| Proposition I: | The prosecutor improperly dismissed a potential juror. |
| Proposition II: | Structural error occurred when the jury was fragmented during trial. |
| Proposition III: | The prosecutor impermissibly vouched for the credibility of a witness. |
| Proposition IV: | The trial court should have instructed the jury on the lesser-related offense of assault and battery with a dangerous weapon. |
| Proposition V: | Under all of the facts and circumstances of this case, a twenty-year sentence is shockingly excessive. |

Dkt. # 5, Ex. 1.  In an unpublished summary opinion, filed May 7, 2009, in Case No. F-2007-752 (Dkt. # 5, Ex. 3), the OCCA rejected all claims and affirmed Petitioner's conviction and sentence.

---

[2]    Petitioner's co-defendant, Stacey Ross, was also found guilty of Shooting with Intent to Kill and sentenced to twenty (20) years imprisonment. Dkt. # 7-8, O.R. at 291-92. Another co-defendant, Tommy Lee Reynolds, plead guilty to Accessory After the Fact. He was sentenced to twenty (20) years imprisonment, for his role in assisting Petitioner and Ross with the attack on Brown. Id. at 217, 353.

There is no evidence that Petitioner filed a petition for writ of certiorari at the United States Supreme Court. Although Petitioner claims in his reply brief (Dkt. # 8) that he filed a request for post-conviction relief in his district court case, no pleadings related to that proceeding have been provided to this Court for review.

On June 8, 2009, Petitioner filed his federal petition for writ of habeas corpus (Dkt. # 1). He identifies three (3) grounds of error, as follows:

Ground 1:     Batson v. Kentucky, 476 U.S. 79 (1986), challenge.
              Prosecutor did not provide race-neutral explanation for striking African American juror when reason used, incarceration of a close family member, applied equally to white jurors not peremptorily striken [sic].

Ground 2:     Structural error occurred when the jury was fragmented.
              The presence of a juror from another trial in a different courtroom who had been sitting in the jury box for my trial constituted structural error because the case was presented to one juror differently than it was to the other eleven jurors.

Ground 3:     I was entitled to lesser included offense of assault and battery with a dangerous weapon.
              No one intended to kill Mr. Brown. The birdshot made holes in the wall of the apartment at a height higher than where he was sitting on a couch, and he was only hit with birdshot when he got up off the couch and tried to run to the back of the apartment.

(Dkt. # 1). In response to the petition, Respondent argues that Petitioner is not entitled to habeas corpus relief under 28 U.S.C. § 2254(d) on grounds 1 and 2, and that ground 3 is not subject to federal habeas corpus review. See Dkt. # 5.

## ANALYSIS

### A.      Exhaustion/Evidentiary Hearing

As a preliminary matter, the Court must determine whether Petitioner meets the exhaustion requirements of 28 U.S.C. § 2254(b) and (c). See Rose v. Lundy, 455 U.S. 509, 510 (1982).

3

Respondent concedes and the Court agrees that Petitioner fairly presented the substance of his claims to the OCCA on direct appeal.  Therefore, the exhaustion requirement of 28 U.S.C. § 2254(b) is satisfied.

In addition, the Court finds that Petitioner is not entitled to an evidentiary hearing.  <u>See</u> <u>Williams v. Taylor</u>, 529 U.S. 420 (2000).

**B.      Claims adjudicated by the OCCA**

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions.  Under the AEDPA, when a state court has adjudicated a claim, a petitioner may obtain federal habeas relief only if the state decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  <u>See</u> 28 U.S.C. § 2254(d); <u>Williams v. Taylor</u>, 529 U.S. 362, 402 (2000); <u>Neill v. Gibson</u>, 278 F.3d 1044, 1050-51 (10th Cir. 2001).  When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner.  <u>See</u> <u>Bell v. Cone</u>, 535 U.S. 685, 699 (2002); <u>Hooper v. Mullin</u>, 314 F.3d 1162, 1169 (10th Cir. 2002).  Furthermore, the "determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

In this case, the OCCA adjudicated Petitioner's claims on direct appeal. Therefore, they shall be reviewed pursuant to § 2254(d).

1.      **Batson**[3] **challenge (ground 1)**

Petitioner claims in ground one that the State improperly used a peremptory challenge to remove juror Diane Price, a black woman, without providing a sufficiently race-neutral reason to support the challenge. Under Batson, the prosecutor may not exercise a peremptory challenge on the basis of race. In rejecting this claim on direct appeal, the OCCA found, "[t]he State's race neutral explanation for the challenged peremptory strike is supported by the record; thus we find that the trial court did not err in overruling Davis's *Batson* challenge." Dkt. # 5, Ex. 3 at 2 (footnote omitted). Respondent argues that the OCCA's decision was not an unreasonable application of federal law as determined by the Supreme Court.

In order to establish an equal protection violation under Batson, Petitioner must be able to prove that the prosecutor intentionally discriminated on the basis of race when exercising his peremptory challenges. See Sallahdin v. Gibson, 275 F.3d 1211, 1225-26 (10th Cir. 2002).  The disposition of a Batson claim raised in a habeas corpus petition is a question of fact subjected to the standard enunciated in 28 U.S.C. § 2254(d)(2). Id. at 1225 (citing Weaver v. Bowersox, 241 F.3d 1024, 1029-30, 1031 (8th Cir. 2001)). This Court presumes the state courts' factual findings are correct unless they are rebutted by clear and convincing evidence. Id.; 28 U.S.C. § 2254(e)(1).

Petitioner has not met that burden in this case. The record reflects that, during *voir dire* proceedings, the State used its first peremptory challenge to excuse potential juror Diane Price. Dkt. # 7-3, Tr. Trans. Vol. I at 138. Counsel representing Petitioner's co-defendant raised a Batson challenge and asked for further explanation from the State. The following colloquy occurred:

---

[3]      Batson v. Kentucky, 476 U.S. 79 (1986).

Prosecutor:     While the State concedes that Ms. Price said that she thinks that she could be fair and impartial, she has a father who was convicted just this past December in Memphis and is now on death row.

She said her cousin was prosecuted in Tulsa, I can't remember what it is that she said - - but that it was later returned on appeal because they prosecuted the case wrong, which was her exact words. And although she said that she didn't know too much about it, that her cousin did talk to her when she was 18 and talked to her about it.

Court:          Anything further?

Petitioner's attorney:  I join in the Baton [sic] challenge.

Court:          The Court believes in view of the Batson challenge that it's my determination to find whether or not there's a racially neutral reason for excusing the juror. And the court believes that with the fact that her father has been convicted and is on death row and she has a brother [sic] who was prosecuted in this courthouse and it was reversed, that regardless of that juror's race, that would be grounds to remove the juror. So the Court will overrule the Batson challenge and excuse Ms. Price.

Id. at 138-39. Petitioner has failed to show that these reasons offered by the prosecutor, that Ms. Price was being removed because her father had recently been convicted and put on death row, and her cousin had also been convicted in a Tulsa County case which was reversed on appeal, were pretextual. Nor do the prosecutor's proffered reasons for striking Ms. Price appear illogical or unpersuasive. Therefore, the Court finds Petitioner has not presented clear and convincing evidence demonstrating that the prosecution purposefully discriminated on the basis of race when exercising its peremptory strike against Ms. Price. As a result, Petitioner is not entitled to habeas corpus relief under 28 U.S.C. § 2254(d)(2).  Sallahdin, 275 F.3d at 1225.

## 2.     Structural error claim (ground 2)

Petitioner next claims that structural error occurred at his trial when the trial court attempted to fix an unusual problem with the jury. When the third day of trial began, the State called Ms. Jane

Hall to the stand. Dkt. # 7-5, Tr. Trans. Vol. III at 483. Ms. Hall was the apartment manager at the complex where the shooting occurred. Id. at 484. She testified briefly about hearing gunshots on the morning of October 25, 2005, calling 911, observing two men in hoodies running away, and seeing if she could help the occupants of the apartment where the shooting occurred. Id. at 485-90. The second witness called by the State was Tulsa Police Officer Michael Eubanks. Id. at 492. Officer Eubanks testified that he responded to a "shooting call" at the Heatherstone Apartments on the morning of October 25, 2005. Id. at 492-93. He had begun testifying about his actions and initial observations when it was learned that juror number 12 was missing. Id. at 498-99. Petitioner's trial judge, the Honorable Clancy Smith, asked the juror sitting in the seat where the missing juror was supposed to be if he was in the wrong courtroom. Id. at 499. When the juror replied that he was "with Judge Pace," the court went off the record to resolve the problem. Id. Upon locating the missing juror, Officer Eubanks' testimony was started anew. Id. at 500. Ms. Hall returned to court during the lunch hour to repeat her testimony for juror number 12. Id. at 542-49. Petitioner claims that these events constituted structural error and deprived him of a fair trial.

On direct appeal, the OCCA reviewed this claim for plain error[4] and rejected it, finding as follows:

> We are not persuaded that the absence of Juror number 12 during the testimony of one witness and partial testimony of another amounts to structural error in this case. When the absence of the juror was brought to the trial court's attention, the trial court took corrective action. The missing juror was located and the testimony of the witness on the stand when the juror's absence was discovered was started anew. The witness that the juror missed was recalled and examined again for the missing juror

---

[4]    Petitioner specifically waived any objection to the trial court's remedy, thereby waiving all but plain error under Oklahoma law. See Dkt. # 7-5, Tr. Trans. Vol. III at 500; Cannon v. Mullin, 383 F.3d 1152, 1174 (10th Cir. 2004) (noting that under Oklahoma law, plain errors are those which counsel failed to preserve through trial objection).

7

while the other jurors were out to lunch. While the trial court had other options, such as seating the alternate or proceeding with an eleven member jury upon a valid waiver by the defendant, the trial court's remedy, with which the parties agreed, was sufficient to cure the problem. We note that there was no material difference between the first testimony and the second of either witness who was re-examined for the benefit of the missing juror. We have read both versions of the testimony given twice and find no significant difference between them. We note for good measure that there is no record of non-verbal behavior of either witness that might have affected the connotation of the actual words. The trial judge here was faced with an unusual problem and fashioned, without objection, an appropriate remedy. There is no plain error.

Dkt. # 5, Ex. 3 at 2-3 (footnotes omitted).

The Supreme Court describes structural error as a "defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." Arizona v. Fulminante, 499 U.S. 279, 309 (1991). A structural error "is not amenable to harmless error review." Brown v. Sirmons, 515 F.3d 1072, 1077-78 (10th Cir. 2008) (citing Brecht v. Abrahamson, 507 U.S. 619, 629-30 (1993) ("The existence of such defects . . . requires automatic reversal of the conviction because they infect the entire trial process.")). Examples of structural errors include violations of the right to counsel, right to an impartial judge, right to self-representation, and right to a public trial - all errors which affect the trial from beginning to end. See Fulminante, 499 U.S. at 309-10. "Concluding that an error is structural is 'the exception and not the rule' and 'if the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other errors that may have occurred are subject to harmless-error analysis.'" Webber v. Scott, 390 F.3d 1169, 1176 (10th Cir. 2004) (quoting Rose v. Clark, 478 U.S. 570, 578-79 (1986)). The appropriate harmless error standard to be applied on habeas review is from Brecht, 507 U.S. at 638. See Herrera v. Lemaster, 301 F.3d 1192, 1199 (10th Cir. 2002). That standard "requires reversal only if [the error] had substantial and injurious effect or influence in determining the jury's verdict." Brecht, 507

U.S. at 631 (quotation omitted).  "[E]rrors which do not contribute to the verdict should not be reversed unless their effect is fundamentally unfair." United States v. Turrietta, 696 F.3d 972, 984 (10th Cir. 2012) (citing Clark, 478 U.S. at 579).

In Petitioner's case, the Court disagrees with Petitioner that the juror mix-up was structural error.  Petitioner was represented by counsel and he does not allege, and nothing in the record suggests, that he was not tried by an impartial adjudicator. Therefore, any error resulting from the juror mix-up is trial error, subject to harmless-error analysis.  As noted by the OCCA, the only testimony presented while juror number 12 was missing was the apartment manager's description of her actions upon hearing gunshots, and part of Officer Eubanks' testimony. Once juror number 12 was returned to the jury box, the State began questioning Officer Eubanks from the beginning so the formerly missing juror heard all of his testimony, just as the other eleven jurors did. The apartment manager, Ms. Hall, was recalled to repeat her testimony for juror number 12 during the lunch hour. The second round of Ms. Hall's testimony mirrored her original testimony. Furthermore, the Court finds that Ms. Hall's testimony was not essential to the jury's ultimate determination of guilt of innocence. In light of the remedy provided by the trial judge, the Court cannot find that the mix-up with juror number 12 had a "substantial and injurious effect or influence in determining the jury's verdict." Brecht, 507 U.S. at 631. The OCCA's denial of relief on this claim was not an unreasonable application of Supreme Court law. 28 U.S.C. § 2254(d).  Petitioner is not entitled to habeas corpus relief on this issue.

### 3.      Failure to give lesser-included offense instruction (ground 3)

Petitioner asserts in this third ground for relief that his constitutional rights were violated when the trial court did not, *sua sponte*, issue an instruction to the jury on the lesser-included offense

9

of Assault and Battery With a Dangerous Weapon. The OCCA rejected this claim, finding that an instruction on the lesser offense was unwarranted and no rational juror could acquit Petitioner of Shooting With Intent to Kill while simultaneously convicting him of Assault and Battery With a Dangerous Weapon. Dkt. # 5, Ex. 3 at 3.

It is not necessary to dwell on Petitioner's claim because no constitutional right has been violated. Petitioner's case was a non-capital case. Tenth Circuit precedent establishes a rule of "automatic non-reviewability" for claims based on a state court's failure, in a non-capital case, to give a lesser included offense instruction.  Dockins v. Hines, 374 F.3d 935, 938 (10th Cir. 2004) (stating that neither the Tenth Circuit nor the United States Supreme Court has ever recognized a federal constitutional right to a lesser included offense instruction in non-capital cases). For that reason, Petitioner is not entitled to habeas relief on his claim challenging the trial court's failure to issue a lesser-included offense instruction on Assault and Battery With a Dangerous Weapon.

## C.  Certificate of appealability

Rule 11, Rules Governing Section 2254 Cases in the United States District Courts, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing."  A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings.  Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (citing Barefoot v. Estelle, 463 U.S. 880, 893 (1983)).

The Court concludes that a certificate of appealability should not issue. Nothing suggests that the Tenth Circuit would find that this Court's application of deference to the decision by the OCCA was debatable amongst jurists of reason.  See <u>Dockins</u>, 374 F.3d at 938. The record is devoid of any authority suggesting that the Tenth Circuit Court of Appeals would resolve the issues in this case differently. A certificate of appealability shall be denied.

### *CONCLUSION*

After careful review of the record in this case, the Court concludes that Petitioner has not established that he is in custody in violation of the Constitution or laws of the United States. Therefore, his petition for writ of habeas corpus shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED that:**

1.      The petition for writ of habeas corpus (Dkt. # 1) is **denied**.

2.      A separate judgment shall be entered in this matter.

3.      A certificate of appealability is **denied**.

4.      The Court Clerk shall substitute Terry Martin, Warden, in place of Greg Province, Warden, as the party Respondent in this matter.

**DATED** this 30th day of November, 2012.

James H. Payne
United States District Judge
Northern District of Oklahoma

11